BROWN, NERI, SMITH & KHAN, LLP
Nathan M. Smith (SBN 255212)
Nona Yegazarian (SBN 316458)
11601 Wilshire Blvd, Suite 2080
Los Angeles, California 90025
Tel.: (310) 593-9890
Fax: (310) 593-9980
nate@bnsklaw.com

Additional co-counsel identified
on the signature page

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESSE FINK DBA TOY BOAT DESSERT CAFE**, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**THE HANOVER INSURANCE GROUP, INC.**, and **MASSACHUSETTS BAY INSURANCE COMPANY**,<br><br>     Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br><u>**CLASS ACTION**</u><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jesse Fink, DBA Toy Boat Dessert Cafe ("Toy Boat" or "Plaintiff"), by way of Complaint against Defendants The Hanover Insurance Group, Inc. ("Hanover") and Massachusetts Bay Insurance Company ("Massachusetts") (collectively, the "Defendants") alleges as follows:

## I.  INTRODUCTION

1.      In December 2019, the infectious Coronavirus ("COVID-19") disease emerged in Wuhan, China, rapidly spreading to Europe and the United States, reaching California by late January 2020.[1]

2.      On January 30, 2020 the World Health Organization (the "WHO") declared a public health emergency of international concern.  Six weeks later, on March 11, 2020, the WHO assessed COVID-19 as a global pandemic.[2]

3.      On March 16, 2020, the White House, the Center for Disease Control and Prevention (the "CDC"), and members of the US national Coronavirus Task Force issued guidance to the American public, titled "30 Days to Slow the Spread" for stopping the spread of COVID-19 in the United States.[3]  This guidance advised individuals to adopt extensive social distancing measures, including working from home for all non-essential businesses, avoiding discretionary travel and gatherings of more than 10 people, and staying away from public venues.[4]

---

[1] *See* Holly Secon, Aylin Woodward and Dave Mosher,  *A comprehensive timeline of the new coronavirus pandemic, from China's first COVID-19 case to the present*, Business Insider (May 4, 2020) https://www.businessinsider.com/coronavirus-pandemic-timeline-history-major-events-2020-3; LA Times, *Tracking coronavirus in California* (last visited May 13, 2020) https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/.
[2] *See* World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19* (March 11, 2020) https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.
[3] *See* The Whitehouse, Coronavirus Guidelines for America, *30 Days To Slow The Spread* (March 16, 2020) https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america/.
[4] *See id.*

CLASS ACTION COMPLAINT

4.      The result of these government-mandated restrictions and prohibitions has threatened the survival of many businesses, especially small and medium enterprises which have been forced to shut down operations, lose cash flow, and furlough employees -- while continuing to pay for substantial existing obligations and overhead.[5]  The COVID-19 crisis is especially acute for restaurants and eateries where businesses depend on customer-staff interactions and which are often unable to deliver food to patrons -- with delivery itself raising safety and logistical challenges.

5.      Most businesses insure against unforeseen catastrophic events like the ongoing COVID-19 pandemic and the subsequent government-mandated closures through general commercial property insurance policies.  These contractual policies promise to indemnify policyholders for actual business losses incurred when business operations are involuntarily suspended, interrupted, or curtailed.  This coverage is commonly known as "business interruption coverage" and is standard in most general commercial property insurance policies.[6]

6.      The State of California requires that insurance companies operating there must promptly conduct fair, balanced and thorough investigations of all bases of claims for benefits made by insured entities.  As part of these obligations, an insurance company is required to diligently search for and consider evidence that supports coverage of the claimed loss, and in doing so must give at least as much consideration to the interests of its insured as it gives to its own interests.[7]

7.      During the COVID-19 Pandemic, California Insurance Commissioner Ricardo Lara issued a notice entitled "Requirement to Accept, Forward, Acknowledge, and Fairly

---

[5] *See* Jane Yamamoto, *Small Businesses Struggle to Stay Afloat as COVID-19 Fears Keep Customers Away*, NBC Los Angeles (March 14, 2020) https://www.nbclosangeles.com/news/coronavirus/small-businesses-struggle-to-stay-afloat-as-covid-19-fears-keep-customers-away/2329175/.
[6] *See* Kimberly Lankford, *What Is Business Interruption Insurance?*, U.S. News & World Report (April 8, 2020) https://money.usnews.com/money/personal-finance/saving-and-budgeting/articles/what-is-business-interruption-insurance.
[7] *See* California Department of Insurance, *Fair Claims Settlement Practices Regulations* (Last visited May 14, 2020) http://www.insurance.ca.gov/01-consumers/130-laws-regs-hearings/05-CCR/fair-claims-regs.cfm#preamble.

CLASS ACTION COMPLAINT

Investigate All Business Interruption Insurance Claims Caused by the COVID-19 Pandemic" after the California Department of Insurance "ha[d] received numerous complaints from businesses, public officials, and other stakeholders asserting that certain insurers, agents, brokers, and insurance company representatives [we]re attempting to dissuade policyholders from filing a notice of claim under its Business Interruption insurance coverage, or refusing to open and investigate these claims upon receipt of a notice of claim."[8]

8.    The Commissioner's notice stated that the failure to fairly investigate these claims could violate the California Fair Claims Settlement Practices Regulations (Cal. Code Regs., tit. 10, §§ 2695.1 et seq. ("Regulations")).  The notice went on to state, "Therefore, Insurance Commissioner Ricardo Lara finds it necessary to issue this Notice to ensure that all agents, brokers, insurance companies, and other licensees accept, forward, acknowledge, and fairly investigate all business interruption insurance claims submitted by businesses."  The Commissioner announced that "*every insurer is required to conduct and diligently pursue a thorough, fair, and objective investigation of the reported claim*."[9]  (emphasis added).

9.    Plaintiff purchased Property Coverage, General Liability Premium, and Additional Coverage Premium insurance from Defendant on May 17, 2019, for a period from May 20, 2019 through May 20, 2020.  Defendants have reneged on their obligations and have refused to cover business income losses and other covered expenses incurred by Plaintiff caused by the government-mandated COVID-19 pandemic closure.

10.    Consistent with California insurance claims handling standards, Plaintiff had the right to rely on Defendants to handle his insurance claim for business interruption losses in a

---

[8] *See* California Department of Insurance, *Commissioner Lara requires insurance companies to fairly investigate all business interruption claims caused by COVID-19* (April 14, 2020) http://www.insurance.ca.gov/0400-news/0100-press-releases/2020/release039-2020.cfm

[9] *See* California Department of Insurance, *All Admitted and Non-Admitted Insurance Companies, All Licensed Insurance Adjusters and Producers, and Other Licensees and Interested Parties* (April 14, 2020) http://www.insurance.ca.gov/0250-insurers/0300-insurers/0200-bulletins/bulletin-notices-commiss-opinion/upload/Business-Interruption-Claims-Notice.pdf.

CLASS ACTION COMPLAINT

PAGE 4 OF 27

manner consistent with the standards of good faith and fair dealing.  Unfortunately for Plaintiff, Defendants denied the claim in its entirety.

11.     This action seeks a declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop its spread triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that curtail policyholders' business operations, and finds that Defendants are liable for the corresponding business losses suffered by policyholders.

12.     This action brings a claim against Defendants for the breach of their contractual obligations under common general commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human to human and surface to human spread of the COVID-19 pandemic.

13.     Plaintiff brings this action on behalf of a proposed class of insurance policyholders who paid insurance premiums in exchange for commercial insurance policies that included lost business income and extra expense coverage.

**II.  JURISDICTION**

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the putative class is a citizen of a different State than that of Defendants.

**III. INTRADISTRICT ASSIGNMENT**

15.     Intradistrict assignment/venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events or omissions giving rise to the claim occurred and where the insured business that is the subject of the action is situated. Intradistrict Assignment/venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants do business in this District and thus reside in this District pursuant to 28 U.S.C. § 1391(c).

CLASS ACTION COMPLAINT

PAGE 5 OF 27

#### IV. PARTIES

16.     Plaintiff Jesse Fink is a California citizen and is a proprietor doing business as Toy Boat Dessert Cafe. Toy Boat's principal place of business is in San Francisco, California. Toy Boat operates as a dessert cafe which depends on its premises being open, its staff being available, and its patrons being able to visit its location and order desserts, beverages, and wraps on premises.

17.     Defendant The Hanover Insurance Group, Inc. is a Massachusetts corporation engaged in selling property-liability insurance with its principal place of business in Worcester, Massachusetts.  It owns subsidiaries that also engage in property-liability insurance.  Hanover trades on the New York Stock Exchange ("NYSE") under the ticker THG.

18.     Defendant Massachusetts Bay Insurance Company is a Massachusetts corporation engaged in property and casualty insurance services.  Massachusetts Bay is a subsidiary of Hanover.

19.     Defendants issued a Businessowners Insurance Policy (the "Policy") to Plaintiff on May 17, 2019, policy number ODF-D921993-00 and form number 391-1003 08/16.

20.     Plaintiff has paid all Policy premiums charged by Defendants under the insurance agreement to ensure coverage for lost business income and surplus expenses caused by involuntary business interruptions.

#### V. FACTUAL BACKGROUND

#### A.  The COVID-19 Pandemic Causes Business Closures

21.     Viruses in the Coronavirus family, including the Middle East respiratory syndrome (MERS) coronavirus (MERS-CoV) and severe acute respiratory syndrome (SARS) coronavirus (SARS-CoV), have infected humans and caused the loss of life since as early as 2002.

22.     In December 2019, an initial cluster of patients with an unknown viral pneumonia was found to be linked to the Huanan Market in Wuhan, China.[10]

23.     By January 2020, viral testing had allowed scientists to identify SARS-CoV-2, an RNA virus with a crown-like appearance.  Named after its crown-like structural proteins, the virus envelope has a crucial role in virus pathogenicity as it promotes rapid viral assembly and release.[11]

24.     The first confirmed case of the virus outside China was diagnosed on January 13, 2020 in Bangkok, Thailand with the number of cases increasing rapidly worldwide.  On January 30, 2020, the World Health Organization (WHO) declared the SARS-CoV-2 outbreak constituted a public health emergency of international concern, and by February 11, 2020, the virus was named "COVID-19" by the WHO Director-General.  As of May 29, 2020, the WHO reports over 5.6 million confirmed cases of COVID-19 globally and over 356,000 deaths, with the United States having suffered more than 1.7 million confirmed cases and 100,000 deaths -- higher than any other country.[12]

25.     COVID-19 symptoms vary from severe and fatal cases of respiratory failure requiring ventilation and intensive care support, to mild and asymptomatic effects requiring no further medical attention.  Severe cases of COVID-19 include pneumonia, fever, cough, and dyspnea.  There are currently no certain treatments for COVID-19, and while vaccine development remains in progress, it is uncertain when treatment will be proven, tested, and available to the public.

26.     COVID-19 has several modes of transmission.  Pursuant to a "Situation Report" released by the WHO, the virus can be transmitted through symptomatic transmission, pre-symptomatic transmission, or asymptomatic transmission.  Symptomatic transmission refers to

---

[10] *See*  World Health Organization, *Pneumonia of unknown cause – China* (January 5, 2020) https://www.who.int/csr/don/05-january-2020-pneumonia-of-unkown-cause-china/en/.

[11] *See* Cascella M, Rajnik M, Cuomo A, et al. *Features, Evaluation and Treatment Coronavirus (COVID-19)* (April 6, 2020) https://www.ncbi.nlm.nih.gov/books/NBK554776/.

[12] *See* World Health Organization, *Coronavirus disease (COVID-19) pandemic* (last visited May 29, 2020) https://www.who.int/emergencies/diseases/novel-coronavirus-2019.

CLASS ACTION COMPLAINT

transmission by an individual who is experiencing symptoms associated with the virus who then transfers COVID-19 to another individual.  Studies reveal that COVID-19 is primarily transmitted from symptomatic people to others who are in close contact through respiratory droplets, by direct contact with infected persons, or by contact with contaminated objects and surfaces.

27.    The incubation period for COVID-19, i.e. the time between infection and the manifestation of symptoms, averages 5-6 days.  However, it can be up to 14 days.  During this period, also known as the "presymptomatic" period, infected persons can be contagious.  For that reason, transmission from a pre-symptomatic case can occur before symptom onset. Presymptomatic transmission still requires the virus to be spread through infectious droplets or touching contaminated surfaces.  Asymptomatic persons can still transmit the virus to others.

28.    Besides human-to-human contamination, the WHO and medical experts have determined that the virus can survive on contaminated objects and surfaces -- for up to nine days according to one study.  As a result, all physical premises can be affected by secondary COVID-19 contagion, even when infected persons are not physically present.  This directly impacts the physical premises of virtually all businesses.

29.    In the absence of a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human to human and surface to human exposure. The CDC's website advises that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on it.

30.    As a result of the primary and secondary exposure risks to COVID-19, the CDC recommends that in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventive measures such as consistent hand washing and avoiding activities that would bring them into close proximity of people with the virus or surfaces where the virus may reside.  Because these recommendations have been unable to neutralize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing all non-essential business establishments, including restaurants, bars, hotels, theaters, personal care

salons, gyms, schools, and other non-essential commercial businesses such as Plaintiff's, and mandating social distancing among the population.[13]

31.    Beyond the COVID-19 virus' own impact, government-mandated closures anticipating the virus' spread have caused the severe curtailment to the effective shutdown of many sectors of the United States economy.[14]    Thus, many businesses have been adversely impacted by civil authorities' lockdown orders without having been impacted by the virus itself.

32.    As of May 13, 2020, virtually all states had implemented at least a partial closing over the course of the COVID-19 pandemic, with about half of states -- including the state of California -- remaining "shut down" under a "stay-at-home" order.[15]    However, some states had launched partial re-openings after previously implementing more complete shutdowns, indicating the state authority-based nature of COVID-19 lockdowns.

### B.  Plaintiff's Insurance Policy

33.    Plaintiff's Policy is a "general liability" commercial insurance policy which covers losses or damage to Plaintiff's covered premises resulting from all risks not expressly excluded under the policies' "Causes of Loss" exclusions.

34.    Plaintiff's Policy, as well as the policies of other Class Members, are Defendants' standard commercial insurance forms.

35.    Plaintiff's commercial insurance coverage under the Policy ran through May 20, 2020.

---

[13] *See* California Coronavirus (COVID-19) Response, *Stay home except for essential needs* (last visited May 14, 2020) https://covid19.ca.gov/stay-home-except-for-essential-needs/.

[14] *See* Business Insider, *More than half of the US population is now under orders to stay home — here's a list of coronavirus lockdowns in US states and cities* (April 1, 2020) https://www.businessinsider.com/states-cities-shutting-down-bars-restaurants-concerts-curfew-2020-3

[15] *See* The New York Times, *See Which States Are Reopening and Which Are Still Shut Down* (last visited May 14, 2020) https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.  Plaintiff's Factual Allegations**

36.     Plaintiff's Policy includes Business Income coverage, which require Defendants to indemnify Plaintiff for his lost income and profits if Toy Boat's business is forced to suspend operations due to a covered cause of loss.

37.     Plaintiff's Policy is described in the "Businessowners Coverage Form", Form 391-1003 08/16, which includes an obligation by Hanover to pay Plaintiff's lost income due to suspension:

> f. Business Income
> When Business Income Coverage is provided under this policy:
> **(1) Business Income**
> > (a) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss. . .

38.     The Policy describes "Business Income" as the:

> (i)     Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;
> (ii)    Continuing normal operating expenses incurred, including "payroll expenses".  However, if your business is not generating any income because you are primarily in research or development or have not yet brought your product to market, your continuing normal operating expenses, including "payroll expenses", will not be offset by the Net Loss; and
> (iii)   "Rental Value".

39.     Beyond the provision requiring Business Income Coverage for necessary suspensions, the Policy also includes Extended Business Income Provisions:

> **(2) Extended Business Income**
> If no Business Income Coverage is provided under this Coverage Form, then there is no Extended Business Income Coverage afforded under this Coverage Form.
>> **(a) Extended Business Income – Other Than Rental Value**
>> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income you incur during the period that . . .
>>> (i)     Ends on the earlier of:
>>>> (1) The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or
>>>> (2) The number of consecutive days shown in the Additional Property Coverage Business Income Business Income after the date determined in (a) Extended Business Income – Other Than Rental Value, paragraph (i) above.
>> However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.
>> Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

40.     The Policy also includes a provision entitled "Extended Business Income – Rental Value" which promises coverage for rental costs during "necessary suspension".

41.     The Policy includes a Civil Authority coverage section:

> **SECTION I – PROPERTY**
> **A. Coverage**
>> **5. Additional Coverages**
>> **i. Civil Authority**
>> When Business Income Coverage is provided under this Coverage Form:
>> (1) When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises

due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;
>
> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(2) Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began. Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

> (a) Four consecutive weeks after the date of that action; or
>
> (b) When your Civil Authority Coverage for Business Income ends; whichever is later.

(3) The definitions of Business Income and Extra Expense contained in SECTION I – PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income; and g. Extra Expense also apply to this Additional Coverage.

42.     The Policy's Business Interruption Coverage is broad-based, and as was reasonably understood by Plaintiff, the Covered Causes of Loss include *all* "Risks of direct physical loss unless the loss is . . . Excluded . . . or Limited . . .".    However, none of the Exclusions or Limitations apply to Plaintiff's loss of business caused by government-mandated closure.

43.    First, the "Ordinance or Law" exclusion is narrowly drawn, stating that Defendants will not pay for loss or damage caused by:

The enforcement of or compliance with any ordinance or law:
(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.

44.    Thus, because the State of California's COVID-19 pandemic orders are not an ordinance or law "regulating the construction, use or repair" of the property or "requiring the tearing down of any property" this narrow exclusion does not apply to Plaintiff's obligation to comply with the State's COVID-19 pandemic orders.

45.    Second, the "Virus Or Bacteria" exclusion does not apply.  The exclusion states that the policy will not cover losses caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

46.    The Virus Exclusion is not applicable because Plaintiff's and other class members' losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease", and there is no indication that the COVID-19 virus impacted Plaintiff's premises or caused it to incur any virus-related expenses. Instead, Plaintiff's and Class Members' losses were solely the result of precautionary measures taken by Plaintiff at the behest of California and the federal government to prevent the prospective spread of COVID-19.

47.    Currently, Plaintiff is being denied coverage under the Policy despite having contracted with and reasonably relied upon Defendants' Policy provisions.

48.    Plaintiff and all similarly situated Class members have suffered direct physical loss, loss of business, and damage to their property because they have been unable to use their properties for their intended purposes.

CLASS ACTION COMPLAINT

PAGE 13 OF 27

49.     In the aftermath of the COVID-19 pandemic, Hanover posted the following notice on its website:

**Will My Coronavirus Claims Be Covered?**

As always, we're here to help. We can answer your specific questions regarding coverage for reported claims. Unfortunately, because every claim is unique, we are unable to provide general statements on claims scenarios regarding coronavirus coverage.[16]

50.     Plaintiff requested that Defendants cover the business losses he incurred as a result of the government-mandated COVID-19 shutdown on March 24, 2020.   Reasonably expecting that his insurance Policy would be honored, Plaintiff submitted a claim, requesting that Hanover honor its commitment to provide coverage.

51.     On April 13, 2020, Defendants responded with a letter denying Plaintiff's claim for business income and extra expense coverage, claiming that Plaintiff's premises had not suffered direct physical loss or damage for purposes of that coverage claim.   The letter stated that "Your recently filed claim for loss of business income has been reviewed. The purpose of this letter is to outline the policy terms and conditions which limit or restrict coverage for this event. It was reported that your business was mandated to shut down due to the coronavirus. As a result, the business sustained an income loss."

52.     Defendants pointed to three reasons why Plaintiff's claim should be denied.   First, Defendants claimed that the Business Income section of the Policy can *only* be satisfied with physical damage caused by a Covered Cause.   *See* ¶ 37.   Second, Defendants pointed to the Civil Authority Section as requiring that only direct physical loss or damage to Plaintiff's property would permit a claim, and that Plaintiff did not suffer direct physical loss or damage.   *See* ¶ 41. Lastly, Defendants claimed that the Virus Exclusion precluded Plaintiff's claim because the Policy does not allow coverage for viruses or their results.   *See* ¶ 45.

---

[16] Hanover, *COVID-19 agent resource center* (last visited May 14, 2020) https://www.hanover.com/COVID-19/agents.html.

CLASS ACTION COMPLAINT

PAGE 14 OF 27

53.     As drafter of the Policy, if Hanover had wished to exclude "physical loss *or damage*" resulting from government mandated precautionary measures, it could have used explicit language stating such a definition of "physical loss or damage". Hanover, however, did not. Under the most reasonable interpretation of the policy, Plaintiff has suffered both physical losses and other damages as a result of the State of California's COVID-19 pandemic orders closing Toy Boat's premises.

54.     Furthermore, based on the Policy language, the Virus Exclusion should not prevent Plaintiff's "business interruption" claims because Plaintiff's, and other class members', losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Rather, the actual and proximate causes of Plaintiff's and other Class Members' losses were the precautionary measures taken by the State of California, other states, and the federal government to prevent the prospective spread of COVID-19, not because coronavirus was found in or on Plaintiff's insured property. Thus, Plaintiff's business interruption expenses are within the scope of the commercial insurance Policy it contracted for.

### D.  The COVID-19 Pandemic has Affected Hanover's Insurance Policyholders Nationwide.

55.     The COVID-19 pandemic's fallout is physically impacting private commercial property in California and throughout the United States, threatening the survival of thousands of commercial businesses that have had their business operations suspended or curtailed by order of civil authorities.

56.     The overwhelming majority of states have implemented "stay-at-home" orders, and although some are currently rolling back restrictions, it remains in effect in California and has had a devastating impact curtailing Plaintiff's regular business for the past several weeks and is likely to continue to do so.

57.    Defendants seeks to avoid covering commercial losses caused by civil authorities' response to the COVID-19 pandemic.

58.    For example, in response to Congressional inquiry, insurance industry trade groups have stated: "Business interruption policies do not, and were not designed to, provide coverage against communicable diseases such as COVID-19."[17]

59.    Other state governments have adopted a different approach, anticipating that insurance companies will breach their obligations to provide coverage for business losses due to the COVID-19 pandemic closures.  These states have introduced bills requiring every insurance policy insuring against loss or damage to property, which includes the loss of use and occupancy and business interruption, be construed to include, among other covered perils, coverage for business interruption because of global virus transmission or pandemic.

60.    As discussed above, the State of California's Insurance Commissioner has issued a release requiring insurance companies operating in the state to fairly and adequately acknowledge insurance claims and comply with their valid contractual obligations.[18]

61.    A declaratory judgment determining that the business income loss and extra expense coverage provided in common all-risk commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent the Plaintiff and similarly situated Class members from being denied critical coverage for which they have paid.

**VI. CLASS ACTION ALLEGATIONS**

62.    Plaintiff brings this lawsuit pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of themselves and all other persons similarly situated.

---

[17] Insurance Journal, *Insurers Reject House Members' Request to Cover Uninsured COVID Business Losses* (March 20, 2020) https://www.insurancejournal.com/news/national/2020/03/20/561810.htm.
[18] California Department of Insurance, *Commissioner Lara requires insurance companies to fairly investigate all business interruption claims caused by COVID-19* (April 14, 2020) http://www.insurance.ca.gov/0400-news/0100-press-releases/2020/release039-2020.cfm.

63.    The Nationwide Class is defined as:

> All Person or Businesses who have entered into standard all-risk commercial property insurance policies with Hanover, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19.

The California Sub-Class is defined as:

> All California Citizens or Businesses who have entered into standard all-risk commercial property insurance policies with Hanover, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by state authorities to stop the spread of COVID-19.

Excluded from each class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

64.    Plaintiff reserves his right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

65.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

**A. Numerosity**

66.    This action satisfies the requirements of Fed.R.Civ.P. 23(a)(1).    The Class numbers at least in the hundreds and consists of geographically dispersed business entities who are insured for business interruption losses. Hanover sells many insurance policies in the State of California and most, if not all, other states and therefore joinder of the Class members is impracticable.

67.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Hanover's or its agents' books and records.    Plaintiff

CLASS ACTION COMPLAINT

anticipates providing appropriate notice to the certified Class in compliance with Fed.R.Civ.P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## B.  Typicality

68.     This action satisfies the requirements of Fed.R.Civ.P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same all-risk commercial property insurance policy provisions entered into with Hanover.  Each Class member's insurance policy contains the same form providing coverage for business income loss.  None of the forms exclude coverage due to a governmental action intended to reduce the effect of the ongoing global pandemic. As a result, a declaratory judgment as to the rights and obligations under Plaintiff's Policy will address the rights and obligations of all Class members.

## C.  Adequacy of Representation

69.     Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation, including litigation relating to insurance policies.  Plaintiff has no interests antagonistic to or in conflict with other members of the Class.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

## D.  Commonality

70.     This action satisfies the requirements of Fed.R.Civ.P. 23(a)(2) because there are questions of law and fact that are common to each of the classes.  These common questions predominate over any questions affecting only individual Class members.  The questions of law and fact common to the Class include, but are not limited to:

> a.     Whether there is an actual controversy between Plaintiff and Hanover as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions in standard all- risk commercial property insurance policies;

b.       Whether state and federally mandated measures to reduce the spread of the COVID-19 pandemic are excluded from Plaintiff's and the Class members' standard all-risk commercial property insurance policies;

c.       Whether measures implemented by civil authorities to stop the spread of COVID-19 caused business interruptions including physical loss and damage to covered commercial property;

d.       Whether Hanover repudiated and breached the all-risk commercial property insurance policies issued with business interruption coverage by seeking to deny claims for coverage; and

e.       Whether Plaintiff and Class members suffered damages as a result of the anticipatory breach by Hanover.

**E.  Superiority/Predominance**

71.       This action satisfies the requirements of Fed.R.Civ.P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members.  The joinder of individual Class members is impracticable because of the vast number of Class members who have entered into the standard all-risk commercial property insurance policies with the Defendants, with Hanover claiming 904,000 individuals and businesses insured.[19]

72.       Because a declaratory judgment as to the rights and obligations under the uniform all-risk commercial property insurance policies will apply to all Class members, most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions.  The burden imposed on the judicial system by individual litigation, and to Hanover, by even a small fraction of the Class members, would be enormous.

73.       The benefits to the legitimate interests of the parties, the Court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation.  Class adjudication is superior to other alternatives under Fed.R.Civ.P. 23(b)(3)(D).  Class treatment

---

[19] *See* https://www.hanover.com/hanover-at-a-glance/.

CLASS ACTION COMPLAINT

PAGE 19 OF 27

will also mitigate the risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

74.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; use the provisions of Rule 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and use Rule 23(c)(5) to divide any Class into subclasses.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

75.    Plaintiff incorporates by reference all paragraphs above as if set forth in full in this cause of action.

76.    Plaintiff entered into a contract, the Policy, with Defendants.  Defendants owed duties and obligations to Toy Boat under the Policy.

77.    Plaintiff performed all that the Policy required it to do, including the consistent payment of premiums specified by Defendants.

78.    In the business interruption coverage, Defendants agreed to pay for their insureds' actual loss of Business Income sustained due to the necessary suspension of Toy Boat's operations during the "period of restoration."

79.    Defendants also agreed to pay for their insureds' actual loss of Business Income sustained due to the interruption of their operations during the disruption period caused by direct physical loss or damage.

80.    Defendants' Policy language defines "Business Income" as Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred.

CLASS ACTION COMPLAINT

PAGE 20 OF 27

81.     The Closure Orders caused direct physical loss and damage to Plaintiff's and the other Class Members' Covered Properties, requiring suspension of operations at the Covered Properties.  Losses caused by the Closure Orders thus triggered the Business Income provision of Plaintiff's and the other Class Members' Hanover policies.

82.     Hanover's denial of Plaintiff's claim is not in accordance with the terms of the Policy and California law.

83.     As a direct and proximate result of Hanover's conduct and breach of its contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be determined according to proof at the time of trial, plus pre-judgment interest pursuant to California Civil Code, § 3289(b), and other foreseeable and consequential damages according to proof and in amounts to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

84.     Plaintiff repeats the allegations set forth in paragraphs 1-84 as if fully set forth herein.

85.     Hanover has breached its duty of good faith and fair dealing owed to Plaintiff in the following respects:

    a.     Unreasonably acting or failing to act in a manner that deprives Toy Boat of the benefits of the Policy;

    b.     Unreasonably engaging in a pattern and practice of acting or failing to act in a manner that deprives its insureds of the benefits of policies it issues;

    c.     Unreasonably failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of Toy Boat's claim;

    d.     Unreasonably engaging in a pattern and practice of failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of claims made under policies it issues;

e.      Unreasonably failing to diligently search for and consider evidence that supports coverage of Toy Boat's claim;

f.      Unreasonably engaging in a pattern and practice of failing of failing to diligently search for and consider evidence that supports coverage of claims;

g.      Unreasonably failing to conduct an investigation to determine the efficient proximate cause (predominant cause) of Toy Boat's business interruption and closure losses;

h.      Unreasonably of failing to conduct an investigation to determine the actual and proximate causes on claims made by the insureds;

i.      Unreasonably failing to consider Plaintiff and other Class Members' interests;

j.      Unreasonably failing to comply with the Regulations, including      § 2695.7(b)(1);

k.      Unreasonably failing to apply the Policy's definitions and terms to determine whether Toy Boat's claim was covered; and

l.      Unreasonably compelling Toy Boat to institute this action to obtain benefits due under the Policy.

86.     Plaintiff is informed and believes, and thereon alleges, that the foregoing unreasonable, malicious, oppressive and/or fraudulent misconduct was not limited to Hanover's evaluation of this particular claim, but represents an ongoing pattern and practice, which it applies to all of its policyholders, that is specifically designed by Hanover to earn illicit profits at the expense of its policyholders' rights.  This ongoing pattern of conduct constitutes institutional bad faith.

87.     Hanover's institutional bad faith constitutes reprehensible conduct because it is part of a consistent pattern of unfair practices and not an isolated occurrence.  The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in Defendants' policies and practices, specifically as in response to the COVID-19 pandemic.

Plaintiff is informed and believes and thereon alleges that Defendants have engaged in similar wrongful conduct as to other insureds and that it has substantially increased its profits as a result of causing similar harm to others.

88.    As a proximate result of the aforementioned conduct by Hanover, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest and other economic and consequential damages, for a total amount to be shown at the time of trial.

89.    As a further proximate result of Defendants' unreasonable conduct, Plaintiff was compelled to retain legal counsel to obtain the benefits due under the Policy.    Therefore, Hanover is liable to Plaintiff for the attorneys' fees reasonably necessary and incurred by Plaintiff in order to obtain the Policy benefits.  (*Brandt v. Superior Court* (1985) 37 Cal.3d 812; *Cassim v. Allstate* (2004) 33 Cal.4th 780.).

90.    Defendants' conduct was intended to cause injury to Plaintiff; and/or was conduct carried on by Defendants with a willful and conscious disregard of Plaintiff's rights, subjected Plaintiff to unjust hardship in conscious disregard of its rights; and/or constituted an intentional misrepresentation or concealment of a material fact known to Defendants with the intention to deprive Plaintiff of property or legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code, § 3294.  Plaintiff is therefore entitled to an award of punitive damages in an amount appropriate to punish and set an example for other similarly situated insurers.

91.    Defendants' conduct was undertaken by its corporate officers, directors or managing agents who were responsible for claims supervision and operations, underwriting, communications, and/or decisions; and/or this conduct was authorized by one or more of Defendants' officers, directors or managing agents; and/or one or more of Defendants' officers, directors or managing agents knew of the actions and adopted or approved that conduct after it occurred. This conduct was, therefore, undertaken on behalf of Defendants.

**THIRD CAUSE OF ACTION**

**(Declaratory Judgment – Business Income Coverage)**

92.     Plaintiff repeats the allegations set forth in paragraphs 1-92 as if fully set forth herein.

93.     Plaintiff's Hanover Policy, as well as those of the other Class Members, are contracts under which Hanover was paid premiums in exchange for its promise to pay Plaintiff's and the other Class Members' losses for claims covered by the Policy.

94.     Plaintiff and other Class Members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Hanover or Hanover is estopped from asserting them, and yet Hanover has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide the coverage to which Plaintiff and Class Members are entitled.

95.     Hanover has denied claims related to COVID-19 on a uniform and class-wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

96.     An actual case or controversy exists regarding Plaintiff's and the other Class Members' rights and Hanover's obligations under the Policies to reimburse Plaintiff's and Class Members for the full amount of Business Income losses incurred by Plaintiff's and the other Class Members in connection with the suspension of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

97.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Class Members seek a declaratory judgment from this Court declaring the following:

        a.     Plaintiff's and the other Class Members' Business Income losses incurred in connection with the Closure Order and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic are insured losses under their Policies; and

b.     Hanover is obligated to pay Plaintiff and other Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Order during the period of restoration and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment – Civil Authority Coverage)

98.     Plaintiff repeats the allegations set forth in paragraphs 1-98 as if fully set forth herein.

99.     Plaintiff brings this Count individually and on behalf of the other Class Members.

100.     Plaintiff's Hanover Policy, as well as those of the other Class Members, are contracts under which Hanover was paid premiums in exchange for its promise to pay Plaintiff's and other Class members' losses for claims covered by the Policy.

101.     Plaintiff and Class Members have complied with all applicable provisions of their policies, and yet Hanover has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class Members are entitled.

102.     Hanover has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

103.     An actual case or controversy exists regarding Plaintiff's and other Class Members' rights and Hanover's obligations under the Policies to reimburse Plaintiff and other Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and other Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the Orders intended to mitigate the COVID-19 pandemic.

104.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Class Members seek a declaratory judgment from this Court declaring the following:

a.    Plaintiff's and other Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

b.    Hanover is obligated to pay Plaintiff and other Class members the full amount of the state and federal Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the Orders intended to mitigate the COVID-19 pandemic.

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly situated individuals, demands judgment against the Defendants as follows:

1) Declaring this action to be a proper class action maintainable pursuant to Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3) and declaring Plaintiff and his counsel to be representatives of the Class;

2) Issuing a Declaratory Judgment declaring the Parties' rights and obligations under the insurance policies;

3) Awarding Plaintiff and the Class compensatory damages from Hanover's breach of the insurance policies in an amount to be determined at trial, together with appropriate prejudgment interest at the maximum rate allowable by law;

4) Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff and the Class's counsel and experts, and reimbursement of expenses; and

5) Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

6) Awarding such other and further relief the Court deems just, proper, and equitable.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

Dated: June 12, 2020                    By: */s/* Nathan M. Smith

Nathan M. Smith
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Blvd., Suite 2080
Los Angeles, CA 90025
T: (310) 593-9890
F: (310) 593-9980
nate@bnsklaw.com

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship*
Todd S. Garber*
1 N Broadway Suite 900
White Plains, NY 10605
(914) 298-3290
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

**pro hac vice* forthcoming

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT